UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 14-cv-61086-KMM

PEGGY PADUDA,

     Plaintiff,

vs.

KARL STORZ ENDOSCOPY-AMERICA,
INC., KARL STORZ ENDOVISION, INC.,
and KARL STORZ GMBH & CO, KG,

     Defendants.

_____/

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant, Karl Storz Endoscopy-America, Inc., by and through undersigned counsel, and pursuant to Fed. R. Civ. P.12(b)(6), files this Motion to Dismiss Plaintiff's First Amended Complaint and states as follows:

### Introduction

Plaintiff originally brought a five count complaint against Defendant Karl Storz Endoscopy-America, Inc. ("KSEA") alleging 1) Negligence; 2) Strict Liability; 3) Breach of Express Warranty; 4) Breach of Implied Warranty; and 5) Fraudulent Misrepresentation (D.E. 1). On June 26, 2014, KSEA filed its Motion to Dismiss (D.E. 9), addressing, among other things, Plaintiff's failure to generally meet the pleading requirements of Fed. R. Civ. P. 8(a), and to meet the heightened requirements for pleading fraud under Fed. R. Civ. P. 9(b).  In response to this Motion to Dismiss, Plaintiff filed an Amended complaint (D.E. 13), which consists of three counts: 1) Negligence; 2) Strict Products Liability; and 3) Fraudulent Misrepresentation and Omission.

1

As discussed more fully below, none of the claims set forth in Plaintiff's Amended complaint properly allege a cause of action against KSEA, and must be dismissed.

As alleged in the Complaint, KSEA markets and distributes the Storz Morcellator,[1] a cutting instrument used by surgeons to cut, shred and remove tissue during laparoscopic surgery. At its most basic level, the Rotocut G1 is a motorized scalpel.  Plaintiff does not allege that the Rotocut G1 used by the surgeon who performed the surgery on Plaintiff malfunctioned in any way, or that it did not perform exactly as designed or intended.  Instead, the gravamen of Plaintiff's complaint is that the procedure performed by the surgeon spread cancer cells into other areas of Plaintiff's body.

In essence, Plaintiff' claim is that, although her surgeon was the individual who recommended the surgical procedure that was performed, the individual who chose the tools to be used during the procedure, and was the individual who allowed the cancerous tissue to be disseminated throughout Plaintiff's abdominal cavity, the distributor of the tool selected by the surgeon is the appropriate defendant in this lawsuit.  This is analogous to suing the manufacturer of the scalpel used by a surgeon who amputates the wrong leg.  Curiously, Plaintiff has not named the surgeon or the facility where the surgery was performed as a defendant in this suit.

## Argument

I.    **KSEA's Warnings Were Sufficient, as a Matter of Law, to bar Plaintiff's claims Under the Learned Intermediary Doctrine**

Under the learned intermediary doctrine, "manufacturers of prescription medical products have a duty to warn physicians, rather than patients, of the risks associated with the use of a product." *Baker v. Danek Medical,* 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998). The critical inquiry under the doctrine, therefore, is whether the defendant provided adequate warning of the

---

[1] Although referred to by Plaintiff as "The Storz Morcellator," the trade name of the product at issue in this case is the "Rotocut G1 Electromechanical Morcellator."

product's limitations to the Plaintiff's surgeon. *Buckner v. Allergan Pharmaceuticals, Inc.,* 400 So. 2d 820 (Fla. 5th DCA 1981) (granting a motion to dismiss based upon application of the learned intermediary doctrine). The learned intermediary doctrine encompasses all claims based upon a medical device manufacturer's failure to warn, including claims for negligence, strict liability and fraud. *Beale v. Biomet, Inc.,* 492 F.Supp.2d 1360, 1372 (S.D. Fla. 2007).

The basis of Plaintiff's negligence and strict liability claims is that KSEA failed to provide adequate warnings in connection with the sale of the Rotocut G1. In support of her allegations, plaintiff includes a partial excerpt from the Rotocut G1 instruction manual. Notably, Plaintiff did not attach a copy of the instruction manual packaged with the Rotocut G1. The information in this manual, commonly referred to as "package inserts," in cases addressing the learned intermediary doctrine, are required by the Food and Drug Administration ("FDA") for all prescription devices. 21 C.F.R. § 801.109.

Recognizing that prescription medical devices are sold only to medical practitioners for use in the course of their professional practice, the FDA mandates specific labeling requirements be addressed to such medical practitioners. *See id.* The FDA requires that each prescription medical device be sold with:

> Labeling on or within the package from which the device is to be dispensed bears information for use, including indications, effects, routes, methods, and frequency and duration of administration, and any relevant hazards, contraindications, side effects, and precautions under which practitioners licensed by law to administer the device can use the device safely and for the purpose for which it is intended, including all purposes for which it is advertised or represented: Provided, however, That such information may be omitted from the dispensing package if, but only if, the article is a device for which directions, hazards, warnings, and other information are commonly known to practitioners licensed by law to use the device.

*Id.* The content of this labeling is critical to Plaintiff's claims, as those claims are based on

KSEA's duty to warn about the risks of the use of the Rotocut G1.

Under Florida law, "[a] manufacturer of a dangerous commodity, such as a drug, does have a duty to warn but when the commodity is a *prescription drug,* . . .the duty to warn is fulfilled by an adequate warning given to those members of the medical community lawfully authorized to prescribe, dispense and administer prescription drugs." *Buckner,* 400 So. 2d at 822. The rationale for the rule is that:

> where a product is available only on prescription or through the services of a physician, the physician acts as a learned intermediary between the manufacturer or seller and the patient. It is his duty to inform himself of the qualities and characteristics of those products when he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product .... The physician decides what facts should be told to the patient. Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient.

*Id.* at 823 (quoting *Terhune v. A. H. Robbins Co.,* 577 P.2d 975, 978 (1978)). The learned intermediary doctrine, and its rationale is equally applicable to prescription medical devices, under Florida law. *Beale,* 492 F.Supp.2d at 1368.

Therefore, in deciding whether the learned intermediary doctrine controls a case, the primary inquiry is whether the manufacturer of a prescription drug or device provided an adequate warning to the prescribing physician. With regard to this inquiry, the Florida Supreme Court has held, "[w]hile in many instances the adequacy of warnings concerning drugs is a question of fact, we hold that it can become a question of law where the warning is accurate, clear and unambiguous." *Felix v. Hoffman-LaRoche, Inc.,* 540 So. 2d 102, 105 (Fla. 1989). Since the learned intermediary doctrine is a dispositive issue of law, it is an appropriate subject

of a 12(b)(6) motion to dismiss. *Rounds v. Genzyme Corp*., 440 Fed.Appx. 753, 757 (11th Cir. 2011).

"Pharmaceutical manufacturers discharge their duty to warn the learned intermediary by way of a package insert which accompanies" the medical device. *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1250 (11th Cir. 2013). When the package insert for a prescription drug or device adequately warns the physician about the risks associated with the product, the manufacturer cannot be held liable for failure to warn. *Upjohn Co. v. MacMurdo,* 562 So. 2d 680, 682-83 (Fla. 1990).

A copy of the instruction manual for the Rotocut G1 is attached to this motion as Exhibit A. Ordinarily, the attachment of matters outside the pleadings to a motion to dismiss requires the Court to consider whether to disregard those papers or consider them and convert the Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. Fed. R. Civ. P. 12(b). However, A document need not be physically attached to a pleading to be incorporated by reference into it. *Day v. Taylor*, 400 F.3d 1272, 1256 (11th Cir. 2005). If the document's contents are alleged in a complaint, and the document is central to the claims alleged in the Complaint, the Court may consider the entire document on a 12(b)(6) Motion to dismiss. *Id.*

In addition, it is well-settled that there are three exceptions toto the requirement that consideration of exhibits outside the four corners of the complaint requires conversion to a motion for summary judgment: (1) facts that are properly judicially noticed, (2) documents outside the pleadings that are essential to plaintiffs claim and not in dispute, and (3) documents submitted when the parties understood conversion would take place and submitted all the documents they would have submitted even with proper notice. *Universal Express, Inc. v. SEC,* 177 Fed. Appx. 52, 53, (11th Cir. April 18, 2006). The Eleventh Circuit has concluded that the package insert for a pharmaceutical products can be judicially noticed on a motion to dismiss.

*Oxford Asset Management, Ltd. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002), Therefore, this court may take judicial notice of the instruction manual for the Rotocut G1, even though plaintiff did not attach it to the Amended Complaint.  Consideration of the instruction manual does not require the court to convert this Motion into a motion for summary judgment.

Once the warning set forth in the instruction manual is considered in its entirety, the question becomes whether the instructions adequately warn physicians of the risks associated with the Rotocut G1. *See MacMurdo,* 562 So. 2d at 682-83. This standard is met if the warning is "accurate, clear and unambiguous." *Felix,* 540 So. 2d at 105.

In this case, there can be no doubt that instructions accompanying the Rotocut G1 meet the standard articulated by the Florida Supreme Court.  The manual includes a description of the product, indications, contraindications, warnings, precautions and possible adverse effects. Critically, the inserts contain the following information and warnings:

> **Intended use**
>
> The ROTOCUT™ G1 Electromechanical Morcellator in conjunction with the UNIDRIVE® GYN control unit is a motorized unit for morcellating and extracting tissue during laparoscopic procedures in general surgery, gynecology, including the removal of myomas, hysterectomy and urology, including nephrectomy.
>
> Direct use of the ROTOCUT™ G1 Electromechanical Morcellator is contraindicated in the case of malignant tumors and vascularized tissue.  The ROTOCUT™ G1 Electromechanical Morcellator must not be used as a dissection instrument.
>
> Use of the unit in fields other than those indicated above is not allowed for safety reasons.
>
> **Note:** *The use of a tissue extraction bag is advised for the morcellation of malignant tumors or tissue suspected of being malignant, and for tissue that the surgeon may consider to be harmful if disseminated in a body cavity.*

Exhibit A at pg. 15.

These warnings clearly and unambiguously disclose the fact that the Rotocut G1 is not to be used directly on malignant tumors or vascularized tissue.  Plaintiff has alleged that her condition occurred precisely *because* the physician used the Rotocut G1 on a malignant tumor. Moreover, the instructions suggest that the surgeon use a tissue extraction bag if he *suspects* the tissue is malignant or harmful if disseminated in a body cavity.  Thus, Plaintiff's condition is the result of the surgeon disregarding the clear instructions packaged with the Rotocut G1, not a result of its design, manufacture or labeling.  *Felix,* 540 So.2d 105 ("Whether the physician in fact reads the warning, or passes its contents along to the [patient] is irrelevant.").

Alternatively, the "failure of the manufacturer to provide the physician with an adequate warning of the risks associated with a prescription product is not the proximate cause of a patient's injury if the prescribing physician had independent knowledge of the risk that the adequate warning should have communicated." *Christopher v. Cutter Labs*., 53 F.3d 1184, 1192 (11th Cir.1995). "Thus, the causal link between a patient's injury and the alleged failure to warn is broken when the prescribing physician had 'substantially the same' knowledge as an adequate warning from the manufacturer should have communicated to him." *Id.*  In Paragraph 42 of the Amended Complaint, Plaintiff alleges that "The potential for the dissemination of an unsuspected cancer is a known problem in tissue morcellation."  Therefore, even if the warning set forth in the instruction manual for the Rotocut G1 did not adequately disclose the risk of using the device, Plaintiff acknowledges that a surgeon trained in the use of a morcellator would have independent knowledge of the risk that the adequate warning should have communicated.

Accordingly, the warnings provided to surgeons using the Rotocut G1 are adequate, as a matter of law. As such, Plaintiff's claims are subject to the learned intermediary doctrine, which prevents a finding of proximate causation in this case. Plaintiff therefore has failed to state

7

claims for which relief may be granted, and all of her claims must be dismissed.

**II.      The Fraudulent Misrepresentation and Claim Fails to State a Claim.**

The claim for Fraudulent Misrepresentation and Omission (Count III) is subject to the heightened pleading requirements of Rule 9(b).  *Inman v. American Paramount Financial*, 517 F. App'x 744, 748 (11th Cir. 2013).   In order to allege a claim for common law fraud under Florida law, a party must set forth the following:

> 1) the defendant made a false statement or omission of material fact;
>
> 2) the defendant knew the statement was false;
>
> 3) the statement was made for the purpose of inducing plaintiff to rely on it;
>
> 4) plaintiff's reliance was reasonable; and 5) plaintiff suffered damages."

*Arnold v. McFall*, 839 F.Supp.2d 1281, 1289 (S.D. Fla. 2011).   To properly plead a fraud-based claim, the complaint must identify:

> 1) Precisely what statements were made and in what documents or oral representations, or what omissions were made;
>
> 2) The time and place of each such statement and the person responsible for making (or in the case of omissions, not making) same;
>
> 3) The content of such statements and the manner in which they misled the plaintiff; and
>
> 4) What the defendants obtained as a consequence of the fraud.

*Inman* 517 F. App'x at 748.

Here, in support of the fraudulent-misrepresentation claim, Plaintiff Identifies only one statement, contained in a filing made by KSEA with the FDA in 2006 regarding the indications for use of the Rotocut G1:

> Indication: The ROTOCUT G1 Electromechanical Morcellator in conjunction with the UNIDRIVE GYN control unit is a motorized unit for morcellating and extracting tissue during laparoscopic procedures in general surgery, gynecology including the removal or myomas [fibroids] and hysterectomy, and in urology including nephrectomy.

Amended Complaint at ¶ 42.  Plaintiff cannot, and does not, allege that this statement is false. Instead, Plaintiff alleges that this statement amounts to a fraudulent statement because it omits information describing circumstances under which the Rotocut G1 should not be used.

This contention is absurd, in that the document containing the allegedly fraudulent omission is contained in 510(k) summary filed with the Food and Drug administration by KSEA. It appears that Plaintiff is alleging that by providing required information to the FDA on a form entitled "Summary of Safety and Effectiveness," that KSEA is somehow telling surgeons that the Rotocut G1 is safe for all uses.  This misconstrues the purpose of a 510(k) summary. "The 510(k) process is focused on equivalence, not safety. As a result, substantial equivalence determinations provide little protection to the public. These determinations simply compare a post–1976 device to a pre–1976 device to ascertain whether the later device is no more dangerous and no less effective than the earlier device. If the earlier device poses a severe risk or is ineffective, then the later device may also be risky or ineffective." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 493 (1996).  Thus the critical issue in the 510(k) process is the analysis of whether a medical device is substantially similar in use, safety and application to a previously existing product.

The contents of a 510(k) notice are specifically prescribed by the Food and Drug Administration.  21 C.F.R. § 807.92.  The Food and Drug Administration requires the following information to be set forth in the summary:

> (a) A 510(k) summary shall be in sufficient detail to provide an understanding of the basis for a determination of substantial

9

equivalence. FDA will accept summaries as well as amendments thereto until such time as FDA issues a determination of substantial equivalence. All 510(k) summaries shall contain the following information:

(1) The submitter's name, address, telephone number, a contact person, and the date the summary was prepared;

(2) The name of the device, including the trade or proprietary name if applicable, the common or usual name, and the classification name, if known;

(3) An identification of the legally marketed device to which the submitter claims equivalence. A legally marketed device to which a new device may be compared for a determination regarding substantial equivalence is a device that was legally marketed prior to May 28, 1976, or a device which has been reclassified from class III to class II or I (the predicate), or a device which has been found to be substantially equivalent through the 510(k) premarket notification process;

(4) A description of the device that is the subject of the premarket notification submission, such as might be found in the labeling or promotional material for the device, including an explanation of how the device functions, the scientific concepts that form the basis for the device, and the significant physical and performance characteristics of the device, such as device design, material used, and physical properties;

(5) A statement of the intended use of the device that is the subject of the premarket notification submission, including a general description of the diseases or conditions that the device will diagnose, treat, prevent, cure, or mitigate, including a description, where appropriate, of the patient population for which the device is intended. If the indication statements are different from those of the legally marketed device identified in paragraph (a)(3) of this section, the 510(k) summary shall contain an explanation as to why the differences are not critical to the intended therapeutic, diagnostic, prosthetic, or surgical use of the device, and why the differences do not affect the safety and effectiveness of the device when used as labeled; and

(6) If the device has the same technological characteristics (i.e., design, material, chemical composition, energy source) as the predicate device identified in paragraph (a)(3) of this section, a summary of the technological characteristics of the new device in comparison to those of the predicate device. If the device has

> different technological characteristics from the predicate device, a
> summary of how the technological characteristics of the device
> compare to a legally marketed device identified in paragraph (a)(3)
> of this section.

*Id.*  The summary is simply that: a summary of information needed by the FDA to determine whether there is a pre-existing medical device that is substantially similar to the proposed device. The information that is to be included in the summary does not include warnings, descriptions of side effects, or contra-indications.  Thus, the failure to include information regarding the contra-indications of the use of the Rotocut G1 could not logically have been done for the purpose of inducing Plaintiff (or her surgeon) to rely on it, as the statement was directed to FDA for the purpose of providing information to FDA that is required by regulation.

Moreover, as discussed more fully above, the information allegedly omitted from the 510(k) was provided to the surgeon in the instruction manual that KSEA intended the surgeon to read and rely upon in making the decision to use the Rotocut G1 for Plaintiff's surgery.  More specifically, while the 510(k) summary does alert the surgeon not to use the Rotocut G1 directly on malignant tumors or vascularized tissue, or suggest the use a tissue extraction bag if there is a suspicion that tissue is malignant or harmful if disseminated in a body cavity, the instructions do. Therefore, there is simply no basis for Plaintiff to allege that KSEA somehow sought to conceal this risk from Plaintiff or her surgeon by omitting the information from the 510(k).

**III      Plaintiff's Negligence and Strict Liability Claims are Insufficiently Pled**

Pursuant to Rule 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. While the standard set forth in Rule 12(b)(6) requires a court to construe the allegations in the complaint in the light most favorable to the plaintiff, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).   In

*Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified the pleading standard a plaintiff must meet under Federal Rule of Civil Procedure 8(a).  In concluding that the district court correctly dismissed the antitrust claims at issue there, the Court held that a plaintiff may not rely on conclusory allegations. Rather, "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 566 n.3 (citation omitted). To meet the standard under *Twombly*, a plaintiff must therefore allege "more than labels and conclusions" and more than "a formulaic recitation of the elements" of a claim. *Id*. at 555. A complaint, in short, must "possess enough heft to show that the pleader is entitled to relief." *Id*. at 557 (quotations omitted).

In *Ashcroft v. Iqbal*, the Supreme Court made clear that the pleading standard announced in *Twombly* applies outside of the antitrust context. See *Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions.' " (citing Fed. R. Civ. P. 1)). The Court first reaffirmed that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* At 678. As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing *Twombly*, 550 U.S. at 555) ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). Second, the Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'shown' -- 'that the pleader is entitled to relief.' " *Id.* (citations and alterations omitted).

The Court then set forth a two-step process for assessing the sufficiency of a complaint. The analysis begins "by identifying pleadings that, because they are no more than conclusions,

are not entitled to the assumption of truth." *Id*. After weeding out conclusory assertions, a court should consider whether the remaining "well-pleaded factual allegations . . . plausibly give rise to an entitlement to relief." *Id*.; *see also Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290 (11th Cir. 2010) (discussing the Supreme Court's two-step process).

Applying these standards, the Eleventh Circuit has affirmed orders granting defendants' motions to dismiss where complaints have failed sufficiently to allege facts giving rise to a plausible inference of a right to relief. *See Am. Dental Ass'n*, 605 F.3d at 1286, 1296 (affirming order granting motion to dismiss a complaint alleging RICO violations); *Wooten v. Quicken Loans, Inc.*, 626 F.3d 1187, 1189 (11th Cir. 2010) (affirming order granting motion to dismiss a complaint alleging violations of the Georgia Real Estate Settlement Procedures Act and a breach of contract).

Likewise, district courts in this District have recently granted defendants' motions to dismiss where plaintiffs have failed to allege facts to support every element of their claims. For example, the Southern District granted the defendant's motion to dismiss in *Wajnstat v. Oceania Cruises, Inc.*, No. 09-civ-21850, 2011 WL 465340 (S.D. Fla. Feb. 4, 2011), (dismissing negligence claims when plaintiff "failed to allege facts sufficient to show that [d]efendant's actions were negligent, and . . . failed to specify how [d]efendant's own actions proximately caused [p]laintiff's injuries."). Ignoring these principles, Plaintiffs recite a number of legal elements accompanied by conclusory allegations virtually unsupported by any actual factual allegations. To survive a motion to dismiss, however, Plaintiffs must do more than merely state legal conclusions. "[T]hey are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Jackson v. BellSouth Telecomms*., 372 F.3d 1250, 1263 (11th Cir. 2004).

Rule 12(b)(6) likewise authorizes a court to dismiss a claim on the basis of a dispositive

issue of law. *See Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (dismissal proper when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action"). Where, as here, a complaint does not contain either direct or inferential allegations with respect to every material element necessary to support liability, "a claim must be dismissed." *Neitzke*, 490 U.S. at 327.

Plaintiff has pled causes of action for Negligence (Count I) and Strict Products Liability (Count II).  Neither cause of action sufficiently alleges a claim against KSEA.  Under Florida law, a product-liability plaintiff may proceed under theories of negligence and/or strict liability. *See Ford Motor Co. v. Hill*, 404 So. 2d 1049, 1049-50, 1052 (Fla. 1981); *Ferayorni v. Hyundai Motor Co.,* 711 So. 2d 1167, 1170 (Fla. 4th DCA 1998). Under both theories of liability, a plaintiff must prove a defect in the product. *See, e.g., Valencia v. Sanborn Mfg. Co.*, No. 04-cv-21416, 2005 WL 5957819, at *12 (S.D. Fla. Aug. 11, 2005) ("In order to prevail in a products liability action brought under a theory of either strict liability or negligence, a plaintiff must demonstrate that the injuries complained of were caused by a defective product. . .");.  "A manufacturer, although liable for injuries caused by a defect in its product, is not an insurer for all physical injuries caused by its product." *Houdaille Indus., Inc. v. Edwards*, 374 So.2d 490, 493 (Fla. 1979).

Although a plaintiff may pursue either theory or both theories, the doctrines of negligence and strict liability are separate and distinct.  *See Ferayorni*, 711 So. 2d at 1170.  Likewise, within each theory, a plaintiff may plead and prove that a product is defective by one or more of the following separate and distinct forms of defect: (1) a design defect; (2) a manufacturing defect; or (3) a failure to warn.  *See id.; see also Griffin v. Kia Motors Corp.*, 843 2d 336, 339 (Fla. 1st DCA 2003). As with the overall theories of liability, the three forms of defects within negligence

or strict liability are analytically distinct and require different pleading and proof. *See, e.g.,* *Wolicki-Gables v. Arrow Int'l, Inc.*, 641 F. Supp. 2d 1270, 1284-1288 (M.D. Fla. 2009) (discussing the standards applied to the types of defect within each theory). As discussed more fully above, Plaintiff's claims for a failure to warn are barred by the learned intermediary doctrine.

Where a product performs as intended and designed, Florida courts do not apply a theory of strict liability or negligence. *See Shipman v. Jennings Firearms, Inc*., 791 F.2d 1532 (11th Cir. 1986); *See also Coulson v. DeAngelo*, 493 So.2d 98 (Fla. 4th DCA 1986) ("The essence of the doctrine of strict liability for a defective condition is that the product reaches the consumer with something "wrong" with it. In contrast the plaintiff alleged that it was the use of the gun that made it defective, not that it malfunctioned or had a faulty design."). A product which has obviously and inherently dangerous qualities is not necessarily a defective product. *Trespalacios v. Valor Corp. of Florida*, 486 So.2d 649 (Fla. 3rd DCA 1986) ("…it is well settled law that one who is injured while using a perfectly made axe or knife would have no right to a strict liability action against the manufacturer because the product that injured him was not defective."). Plaintiff acknowledges in the Complaint that the Rotocut G1 performed exactly as intended and designed; namely, it cut and shredded tissue. Therefore, Plaintiff cannot prevail under a theory of defective design or manufacture.

In support of her product-liability claims, Plaintiff recites only bare legal elements accompanied by bald conclusory and speculative allegations. Accordingly, unsupported claims warrant dismissal. *See Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1318, 1321-22 (S.D. Fla. 2009) (adopting, in part, Report and Recommendation of the United States Magistrate Judge granting a motion to dismiss and requiring a "pleading that 'give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests' ")

(quoting Twombly).

To state a cause of action for negligence under Florida law, a plaintiff must allege: (1) that the defendant owed plaintiff a legal duty, (2) that the defendant breached that duty, (3) that the plaintiff suffered injury as a result of that breach, and (4) that the injury caused damage. *See Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1227 (Fla. 2010); *see generally* 38 Fla. Jur. 2d Negligence § 15 (2011).  Plaintiffs' negligence presents a hodgepodge of negligence theories without providing any factual support for any of them. Count I alleges that KSEA was negligent in one or more of 28 ways, including "such other acts or omissions constituting negligence and carelessness as may appear during the course of discovery or at the trial of this matter."  Compl. ¶ 19.  After setting aside the litany of conclusory allegations, the Complaint does not plead facts that, even when assumed true, could allow the Court to infer that Plaintiff has satisfied the elements of a negligence claim under any of these theories.

WHEREFORE, Defendant, Karl Storz Endoscopy-America, Inc., respectfully requests that this Honorable Court enter an order dismissing the Amended Complaint, and that the Court grant any such further relief as it deems necessary and proper.

RESPECTFULLY SUBMITTED,

_____/s/Steven Hemmert_____

DANIEL J. SANTANIELLO, B.C.S.
Florida Bar No.: 860948
LOREEN KREIZINGER
Florida Bar No.: 855588
STEVEN HEMMERT
Florida Bar No.:  560863
LUKSFLL-Pleadings@LS-Law.com
LUKS, SANTANIELLO
PETRILLO & JONES
110 S.E. 6th Street, 20th Floor
Ft. Lauderdale, FL 33301
Telephone: (954) 761-990
Facsimile: (954) 761-9940
*Attorneys for Defendant, Karl Storz Endoscopy-America, Inc.*

17

## <u>CERTIFICATE OF SERVICE</u>

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via transmission of Notices of Electronic Filing generated by CM/ECF or by the method specified below, on this 31st_ day of July, 2014.

By:____/s/Steven Hemmert_____
STEVEN HEMMERT
Florida Bar No.:  560863

## <u>SERVICE LIST</u>

*VIA CM/ECF*

Counsel for Plaintiff:
Alex Alvarez, Esq.
355 Palermo Ave.
Coral Gables FL  33134

Phillip E. Holden, Esq.
Alex Alvarez, P.A.
355 Palermo Avenue
Coral Gables, FL  33134

Of Counsel:

Francois M. Blaudeau, MD, JD FACHE FCLM
Southern Institute for Medical & Legal Affairs
2224 1st Avenue North
Birmingham, AL  35203

and

W. Lewis Garrison, Jr., Esq.
Heninger Garrison Davis, LLC
2224 1st Avenue North
Birmingham, AL  35203

and

Christopher B. Hood

Heninger Garrison Davis, LLC
2224 1st Avenue North
Birmingham, AL  35203

20